UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER G. EIKENBERRY,

Plaintiff,

-v-

CELSTEEL LTD. and SAMUEL CHAND CHIB,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/13
```

13 Civ. 4661 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, United States District Judge:

Defendants move to dismiss this case for lack of personal jurisdiction and on grounds of *forum non conveniens*. Plaintiff cross-moves for an "order for a commission to take the deposition testimony and to compel the deposition of" Defendant Chib. For the reasons below, Defendants' motions are denied and Plaintiff's motion is granted.

## BACKGROUND

On July 8, 2013, Plaintiff filed his complaint against Defendants, demanding enforcement of a security interest in and accusing Defendants of converting an emerald necklace. *See* Compl. Plaintiff alleges that non-parties Ralph Esmerian and R. Esmerian Inc. gave Plaintiff a security interest in the necklace, *see* Compl. ¶¶ 8–12, but Defendant Chib "met with Esmerian at Esmerian's and REI's offices at 610 5th Avenue, New York, NY," at which time Esmerian "transferred" the necklace to Chib to extinguish alleged debts to Celsteel, *id.* ¶¶ 14–15. Plaintiff further alleges that Chib took the necklace back to London, where Chib refused to return the necklace to Eikenberry and then made Celsteel sell the necklace. *See id.* ¶¶ 16, 26–27, 30.

At the initial pretrial conference on September 9, 2013, the parties informed the Court that Plaintiff wanted to obtain a deposition of Chib, but that Defendants argued that such a deposition was impermissible because (1) the Court lacked personal jurisdiction, (2) the Southern District of New York was the wrong forum for this case under the doctrine of *forum*

*nonconviens*, and (3) the notice of deposition was improper. The Court ordered an expedited briefing schedule to allow Plaintiff to take Chib's deposition on Plaintiff's counsel's scheduled trip to London, should Plaintiff prevail.

## DISCUSSION

I.   Personal Jurisdiction

"To determine personal jurisdiction over a non-domiciliary . . . , the Court must engage in a two-step analysis. First, we apply [New York's] long-arm statute. . . . If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) (citations omitted).

A.  Long-Arm Statute

As is relevant, New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . ."  N.Y. C.P.L.R. § 302.

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overspelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). In their reply memo, Defendants virtually concede that Plaintiff has made this *prima facie* showing with its allegations that Defendants committed a tortious act in New York when Chib allegedly

2

acquired the emerald necklace in New York, *see* Defs.' Reply Mem. 2–3, 4–5, which is sufficient to survive a motion to dismiss at this stage of the litigation.

    B.  Due Process

    Due process analysis of personal jurisdiction over a nonresident defendant "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloé*, 616 F.3d at 164.  Neither party briefed the due process issue, perhaps because it is relatively simple here.  Where, as here, Defendants have entered New York to conduct the transaction at issue—personally in Chib's case or through its agent in Celsteel's case—Defendants' physical presence and "purposeful availment" are sufficient to satisfy due process.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citation omitted) ( "[W]here the defendant 'deliberately' has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."); *First Capital Inv. Holdings LLC v. Wilson Capital Grp., Inc.*, No. 10 Civ. 2948, 2010 WL 4967833, at *2 (S.D.N.Y. Nov. 30, 2010) ("Since [defendant] allegedly committed a tortious act during the meeting in New York, the Court can properly exercise jurisdiction over him as well as [partnerships for which defendant was an agent] under New York's long-arm statute without violating due process."); *cf. also Burnham v. Superior Court of Cal., Cnty. of Marin*, 495 U.S. 604, 619 (1990) (Scalia, J.) ("[J]urisdiction based on physical presence alone constitutes due process . . . ."); *Burger King*, 471 U.S. at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there . . . .").  The Court

is satisfied that, taking Plaintiff's allegations as true, there are sufficient minimum contacts between Defendants and New York and that exercise of personal jurisdiction is reasonable.

C. Alternatives

In the alternative to denying Defendants' motion, Defendants request limited jurisdictional discovery or delaying resolution of the motion until after a deposition of Esmerian. In the interest of efficiency, the Court favors continuation of full discovery.

II.    Forum Non Conveniens

"The Court of Appeals for the Second Circuit has established a three-part test for motions to dismiss on *forum non conveniens* grounds:  At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, No. 12 Civ. 3721, 2013 WL 2458855, at *3 (S.D.N.Y. June 7, 2013) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).  "'The defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum.'" *Id.* (quoting *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009)).

Defendants do not contest that the degree of deference properly accorded the plaintiff's choice of forum in this case is high.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc) ("[P]laintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum.").  Plaintiff does not contest that the United

Kingdom is an adequate alternative forum. *See RIGroup LLC*, 2013 WL 2458855, at *6 (describing the minimal requirements of an "adequate alternative forum").

Therefore, the entire *forum non conveniens* question in this case boils down to whether the balance of private and public interest factors tilts so heavily in favor of Defendants as to overcome the deference to Plaintiff's choice of forum. *See Iragorri*, 274 F.3d at 70–71 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

"In this case, the relevant private interest factors, which concern the convenience of the litigants, are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *RIGroup LLC*, 2013 WL 2458855, at *8 (citing *Iragorri*, 274 F.3d at 73–74).

Defendants argue that most of the witnesses and evidence are located in the United Kingdom or India and that the Court could not compel those witnesses. *See* Defs.' Mem. Law 9–10. By contrast, Plaintiff argues that he and Esmerian are located in the United States and that his documents are in the United States. *See* Pl.'s Opp'n Br. 3–6. On the whole, these factors lean slightly to the United Kingdom.

The public interest factors "include (1) the administrative burden on the congested court being asked to handle a dispute arising from another forum; (2) the burden of jury duty on the 'people of a community which has no relation to the litigation'; (3) the 'local interest in having localized controversies decided at home'; and (4) the burden of applying foreign law." *RIGroup LLC*, 2013 WL 2458855, at *10 (quoting *Iragorri*, 274 F.3d at 74).

Here, Defendants argue that the New York courts are congested and that execution of any New York judgment would be contested. *See* Defs.' Mem. Law 12–13. The parties dispute

whether New York or United Kingdom law would apply. *See id.* 11–12; Pl.'s Opp'n Br. 5. Defendants' argument is more persuasive on this point, although Defendants' own argument that they had not committed a tort in New York is based on New York law. *See* Defs.' Br. 6–7. The Court finds that New York residents have a sufficient relation to the litigation that jury duty would not be especially burdensome and New York has an interest in having this localized controversy decided at home.

Taking all the factors into consideration, the public and private interests together tilt somewhat toward Defendants, but not so heavily that the Court should dismiss this action in an exercise of its discretion.

### III.  Deposition

Defendants' primary objection to the deposition of Defendant Chib is that Plaintiff has failed to comply with the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555.  For the reasons discussed below, that objection and Defendants other objections are unavailing.

### A.  Hague Convention

"[A] party seeking the application of the Hague Convention procedures, rather than the Federal Rules of Civil Procedure, bears the burden of persuasion." *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 435 (E.D.N.Y. 2008); *see also In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571, 2004 WL 3019766, at *1 (S.D.N.Y. Dec. 30, 2004) ("Although '[t]he Hague Convention is not the exclusive means for obtaining discovery from a foreign entity,' courts are free to determine based on the facts of a particular case that it is 'more appropriate to take discovery abroad under the Hague Convention.'" (quoting *First Am. Corp. v. Price Waterhouse*

*LLP*, 154 F.3d 16, 21 (2d Cir. 1998), and *Madanes v. Madanes*, 199 F.R.D. 135, 140 (S.D.N.Y. 2001))).

As Plaintiff notes, the Supreme Court held that "the Hague Convention is not the exclusive means for obtaining discovery from a foreign entity." *First Am. Corp.*, 154 F.3d at 21 (citing *Société Nationale Industrielle Aérospatiale v. United States District Court,* 482 U.S. 522, 539–40 (1987)). Not only did the Supreme Court deny that the Hague Convention is not "the exclusive means," it also held: "[W]e cannot accept petitioners' invitation to announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant." *Aérospatiale*, 482 U.S. at 539, 542.

Despite this, Defendants argue that Plaintiff should be required to use the Hague Convention to depose Chib because (1) a deposition is more intrusive than the written documents discussed in *Aérospatiale* and (2) this deposition may be the kind of "abusive" discovery about which *Aérospatiale* warned.

First, Defendants argue that *Aérospatiale* and all the cases that have subsequently held that the Hague Convention is not the exclusive means or first resort for discovery from a foreign litigant apply only to written communication, such as document requests and interrogatories. Defendants' point that depositions are more intrusive is well-taken. *See id.* at 545 ("Some discovery procedures are much more 'intrusive' than others."). Indeed, several courts have suggested that—at least nonparty—witnesses that are overseas must be served according to the Hague Convention. *See, e.g.*, *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06 Civ. 5377, 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007) (citing *United States v. Afram Lines (USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)). But these cases are based on an *ipse dixit* in *Afram Lines*. *See* 159 F.R.D at 413.

The Supreme Court was clear that whether a discovery request must be conducted according to the Hague Convention requires a particularized analysis that considers, among other things, "the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987); *see Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) ("In exercising that discretion where, as here, a party claims that foreign law prevents disclosure, the Court has called for a 'particularized analysis,' and endorsed the factors recognized in a draft of what is now § 442 of the Restatement (Third) of Foreign Relations Law of the United States." (quoting *Aérospatiale*, 482 U.S. at 543)).

Here, those factors do not weigh strongly in favor of using Hague Convention protocols. In particular, Defendants fail to raise an issue that creates any comity concerns, such as a real conflict between American and United Kingdom laws. *See In re Maxwell Commc'n Corp.*, 93 F.3d 1036, 1049–50 (2d Cir. 1996) ("International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction." (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993), and *Aérospatiale*, 482 U.S. at 555 (Blackmun, J., concurring in part and dissenting in part))).

Second, Defendants stress that *Aérospatiale* expressed concern about "'abusive' discovery":

> American courts, in supervising pretrial proceedings, should exercise
> special vigilance to protect foreign litigants from the danger that

8

> unnecessary, or unduly burdensome, discovery may place them in a
> disadvantageous position. Judicial supervision of discovery should
> always seek to minimize its costs and inconvenience and to prevent
> improper uses of discovery requests. When it is necessary to seek
> evidence abroad, however, the district court must supervise pretrial
> proceedings particularly closely to prevent discovery abuses. For
> example, the additional cost of transportation of documents or
> witnesses to or from foreign locations may increase the danger that
> discovery may be sought for the improper purpose of motivating
> settlement, rather than finding relevant and probative evidence.

*Aérospatiale*, 482 U.S. at 546. While this is a legitimate concern, the deposition of a defendant

in his home city is hardly an abuse that creates an "additional cost of transportation of documents

or witnesses" or is "sought for the improper purpose of motivating settlement." The closest

Defendants come to articulating why this deposition could be "abusive" is when they argue that

"[c]ounsel of the Plaintiff will probably be paying for her plane ticket out of her own pocket

since her trip to London is unrelated to this case; but Defendants' counsel will have to be flown

to London, at the cost of the Defendants, in order to be present at the deposition of Mr. Chib."

Defs.' Opp'n Br. 10. But, in that same brief, Defendants argue that Chib must be deposed in

London, if at all, because he is the corporate representative for Defendant Celsteel. *See id.* at 7–

8. Defendants cannot have it both ways and this deposition raises no reasonable inference of

abuse.

B.  Other Objections

Defendants also object that Plaintiff's notice of deposition was not specific enough.

Because Plaintiff has to write a new notice of deposition in accordance with this order, that

objection is moot.

Defendants object that Plaintiff's position is confusing because Plaintiff's motion is to

take the deposition of Chib in London, but the notice of deposition was for New York. At the

initial pretrial conference, Plaintiff represented that it was offering to depose Chib in New York should Defendants be unwilling to hold his deposition in London.

Finally, Defendants object to Plaintiff's proposed order, because it was not served on them by email. Ignoring that Defendants received the proposed order by ECF, this, too, is moot because the Court is issuing its approval of Plaintiff's motion in this order and another order, which Defendants will receive.

C. Commission

A commission "may be issued[] (A) on appropriate terms after an application and notice of it; and (B) without a showing that taking the deposition in another manner is impracticable or inconvenient." Fed. R. Civ. P. 26(b)(2). Here, Plaintiff's proposed order left the name of the person to be commissioned blank.

By separate order, the Court commissions any notarizing officer of the United States of America in London to take the deposition. *See* Fed. R. Civ. P. 26(c)(1)(D), (3); 22 C.F.R. § 92.1(d), 92.55(a). This commission will be for the action *Peter G. Eikenberry v. Celsteel Ltd. and Samuel Chand Chib*, 13 Civ. 4661 (AT) (S.D.N.Y.), and it is for a deposition of Defendant Chib. *See* 29 C.F.R. § 92.53.

10

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is DENIED and Plaintiff's motion for a commission to take the deposition testimony and to compel the deposition of Defendant Chib is GRANTED.  The Court will grant the commission by separate order.  The parties shall submit a joint case management plan by September 26, 2013.

SO ORDERED.

Dated: September 19, 2013
       New York, New York

_____
ANALISA TORRES
United States District Judge